## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Karen Smith, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| PENSION BENEFIT INFORMATION, LLC; THE BERWYN GROUP, INC., | <u>DEMAND FOR JURY TRIAL</u> |
| Defendants. | |

Plaintiff Karen Smith ("Plaintiff") brings this Class Action Complaint against Pension Benefit Information, LLC and The Bewryn Group, Inc. ("Defendants" or "PBI"), individually and on behalf of all others similarly situated, and alleges, upon personal knowledge as to her own actions and his counsels' investigation, as follows:

1.    This class action arises out of the recent targeted cyberattack and data breach in 2023 ("Data Incident") on PBI's network that resulted in unauthorized access to customer and employee data. Information compromised in the Data Incident includes Plaintiff's and Class Members' full names, dates of birth, and Social Security numbers (these types of information, *inter alia*, being thereafter referred to, collectively, as "Private Information").[1] The Data Incident has impacted more than 700,000 California Public Employees' Retirement System ("CalPERS") members and an unknown number

---

[1] Personally identifiable information ("PII") generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information. 2 C.F.R. § 200.79. At a minimum, it includes all information that on its face expressly identifies an individual. PII also is generally defined to include certain identifiers that do not on its face name an individual, but that are considered to be particularly sensitive and/or valuable if in the wrong hands (for example, Social Security numbers, passport numbers, driver's license numbers, financial account numbers). Private Information is included in PII.

of California State Teachers' Retirement System ("CalSTRS") members.[2] The Data Breach has also impacted millions of additional individuals nationwide for whom PBI provides pension and insurance related services.[3]

2.      In addition, Plaintiff and Class Members' sensitive personal information—which was entrusted to PBI was compromised and unlawfully accessed due to the Data Incident.

3.      As a result of the Data Breach, Plaintiff and approximately millions of Class Members suffered ascertainable losses in the form of the loss of the benefit of their bargain, out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Incident.

4.      Plaintiff brings this class action lawsuit on behalf of those similarly situated to address PBI's inadequate safeguarding of Class Members' Private Information that it collected and maintained.

5.      PBI maintained the Private Information in a reckless and negligent manner. In particular, the Private Information was maintained on PBI's computer system and network in a condition vulnerable to cyberattacks. Upon information and belief, the mechanism of the cyberattack and potential for improper disclosure of Plaintiff's and Class Members' Private Information was a known risk to PBI, and thus PBI was on

---

[2]  https://www.sacbee.com/news/politics-government/capitol-alert/article276638381.html (Last visited July 10, 2023).

[3]https://www.bleepingcomputer.com/news/security/moveit-breach-impacts-genworth-calpers-as-data-for-32-million-exposed/ (Last visited July 10, 2023).

notice that failing to take steps necessary to secure the Private Information from those risks left that property in a vulnerable condition.

6.     Plaintiff and Class Members' identities are now at risk because of PBI's negligent conduct because the Private Information that PBI collected and maintained is now in the hands of data thieves.

7.     Armed with the Private Information accessed in the Data Incident, data thieves can commit a variety of crimes including, e.g., opening new financial accounts in Class Members' names, taking out loans in Class Members' names, using Class Members' names to obtain services, obtaining driver's licenses in Class Members' names but with another person's photograph, and giving false information to police during an arrest.

8.     As a result of the Data Incident, Plaintiff and Class Members have been exposed to a heightened present and imminent risk of fraud and identity theft. Plaintiff and Class Members must now and in the future closely monitor their financial accounts to guard against identity theft.

9.     Plaintiff and Class Members may also incur out of pocket expenses for, e.g., purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.

10.     Plaintiff seeks remedies including, but not limited to, compensatory damages, reimbursement of out-of-pocket costs, and injunctive relief including improvements to PBI's data security systems, future annual audits, and adequate credit monitoring services funded by PBI.

11.    Plaintiff brings this class action complaint to redress injuries related to the Data Incident, on behalf of herself and a nationwide class.  Plaintiff asserts claims on behalf of a nationwide class for negligence, negligence per se, declaratory judgment, and common law invasion of privacy. Plaintiff seeks, among other things, compensatory damages, injunctive relief, attorneys' fees, and costs of suit.

## JURISDICTION AND VENUE

12.    This Court has original jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because Plaintiff and at least one member of the putative Class, as defined below, are citizens of a different state than PBI, there are more than 100 putative class members, and the amount in controversy exceeds $5 million exclusive of interest and costs.

13.    This Court has general personal jurisdiction over PBI because it maintains its principal place of business at principal place of business in Minneapolis, Minnesota, regularly conducts business in Minneapolis, and has sufficient minimum contacts in Minneapolis. PBI intentionally availed itself of this jurisdiction by marketing and selling products and services from Minneapolis to many businesses nationwide.

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because PBI's principal place of business is in this District and a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## PARTIES

15.    Plaintiff Karen Smith is a resident and citizen of Ohio and is a plan participant of an entity that utilizes PBI's services. On or about June 30, 2023, Plaintiff

received a "Notice of Data Breach" letter dated June 22, 2023. The letter notified Plaintiff that in May or June 2023, PBI's computer servers were accessed by unauthorized actors and that certain Private Information was included in the files that were accessed including Plaintiff's full name, date of birth and Social Security number.

16.     According to a Statement of Information Limited Liability Company that PBI filed with the Office of the Secretary of State for the State of California, PBI, as an LLC, has a single member/manager of Longevity Holdings Inc. Longevity Holdings Inc. has a listed principal place of business of 333 S. 7th Street, Suite 2400, Minneapolis, 55402, and accordingly is a citizen of Minnesota for purposes of diversity jurisdiction.

17.     On information and belief, Pension Benefit Information, LLC is a Delaware limited liability corporation with its principal place of business is located at 333 S. 7th Street, Suite 2400, Minneapolis, Minnesota 55402.

18.     On information and belief, The Berwyn Group, Inc. is an Ohio corporation with its principal place of business located at 2 Summit Park Drive, Independence, Ohio 44131.

## FACTUAL BACKGROUND

19.     Defendants Pension Benefit Information, LLC and The Berwyn Group, Inc. (collectively "PBI") jointly provide pension benefit management services to public pensions throughout the nation, including CalPERS and CalSTRS. CalPERS is the largest public pension fund in the United States, with over $400 billion in its investment portfolio. CalSTRS is a sister fund to CalPERS, and has more than $300 billion in its portfolio.

20.    PBI contracts for CalPERS and CalSTRS, providing pension management services.  PBI assists in identifying pension members who are deceased for the purpose of potentially preventing overpayment of pension benefits and helps identify beneficiaries who are entitled to continued pension benefits.

21.    In order to conduct pension management services, PBI collects, stores, and processes sensitive personal data for millions of individuals, including but not limited to pension members for whom PBI is providing management services. Through its pension management services, PBI retains sensitive information including, but not limited to, bank account information, addresses, driver's license numbers, dates of birth, and social security numbers, among other things.

22.    As a pension management business involving California public pension members, PBI is legally required to protect personal information from unauthorized access and exfiltration.

23.    PBI knew that it would be targeted by hackers given the significant amount of sensitive personal information processed through its computer data and storage systems.  PBI's knowledge is underscored by the massive number of data breaches that have occurred in recent years.

24.    Despite knowing the prevalence of data breaches, PBI failed to prioritize data security by adopting reasonable data security measures to prevent and detect unauthorized access to its highly sensitive systems and databases.  PBI has the resources to prevent a data breach, but neglected to adequately invest in data security, despite the growing number of well-publicized breaches.  PBI failed to undertake adequate analyses

and testing of its own systems, training of its own personnel, and other data security measures as described herein to ensure vulnerabilities were avoided or remedied and that Plaintiff's and Class Members' data were protected.

25.    Specifically, on or around June 6, 2023, PBI notified CalPERS that it discovered a cybersecurity breach. PBI notified CalPERS that a previously "unknown zero day" vulnerability in the MOVEit transfer application allowed data to be downloaded by an unauthorized third party. Few specific details about the Data Breach have been provided to impacted individuals.

26.    Upon information and belief, the hackers responsible for the Data Breach stole the personal information, many of PBI's clients and employees, including Plaintiff's. Because of the nature of the breach and of the personal information stored or processed by PBI, Plaintiff is informed and believes that all categories of personal information were further subject to unauthorized access, disclosure, theft, exfiltration, modification, use, or destruction. Plaintiff is informed and believes that criminals would have no purpose for hacking PBI other than to exfiltrate or steal, or destroy, use, or modify as part of their ransom attempts, the coveted personal information stored or processed by PBI.

**SECURING PII AND PREVENTING DATA BREACHES**

27.    PBI could have prevented this Data Breach by properly encrypting or otherwise protecting its equipment and computer files containing Private Information, but did not do so.

28.     In its notice letters, PBI acknowledged the sensitive and confidential nature of the Private Information. To be sure, collecting, maintaining, and protecting Private Information is vital to virtually all of PBI's business purposes as an actuarial services firm. PBI acknowledged through its conduct and statements that the misuse or inadvertent disclosure of Private Information can pose major privacy and financial risks to impacted individuals, and that under state law they may not disclose and must take reasonable steps to protect Private Information from improper release or disclosure.

## THE DATA INCIDENT WAS A FORESEEABLE RISK OF WHICH PBI WAS ON NOTICE

29.     It is well known that Private Information, including Social Security numbers in particular, is an invaluable commodity and a frequent target of hackers.

30.     In 2021, there were a record 1,862 data breaches, surpassing both 2020's total of 1,108 and the previous record of 1,506 set in 2017.[4]

31.     Individuals place a high value not only on their Private Information, but also on the privacy of that data. For the individual, identity theft causes "significant negative financial impact on victims" as well as severe distress and other strong emotions and physical reactions.

32.     Individuals are particularly concerned with protecting the privacy of their financial account information and social security numbers, which are the "secret sauce" that is "as good as your DNA to hackers." There are long-term consequences to data breach victims whose social security numbers are taken and used by hackers. Even if they

---

[4]*See* https://www.cnet.com/tech/services-and-software/record-number-of-data-breaches-reported-in-2021-new-report-says/ (last accessed July 10, 2023).

know their social security numbers have been accessed, Plaintiff and Class Members cannot obtain new numbers unless they become a victim of Social Security number misuse. Even then, the Social Security Administration has warned that "a new number probably won't solve all [] problems … and won't guarantee … a fresh start."

33.    In light of recent high profile data breaches at other industry leading companies, including, Microsoft (250 million records, December 2019), Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estée Lauder (440 million records, January 2020), Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion records, May 2020), PBI knew or should have known that its electronic records would be targeted by cybercriminals.

34.    Indeed, cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets so they are aware of and take appropriate measures to prepare for and are able to thwart such an attack.

35.    Despite the prevalence of public announcements of data breach and data security compromises, and despite its own acknowledgments of data security compromises, and despite its own acknowledgment of its duties to keep Private Information private and secure, PBI failed to take appropriate steps to protect the Plaintiff's and the proposed Class's Private Information from being compromised.

**PBI, AT ALL RELEVANT TIMES, HAD A DUTY TO PLAINTIFF AND CLASS MEMBERS TO PROPERLY SECURE THEIR PRIVATE INFORMATION**

36.    At all relevant times, PBI had a duty to Plaintiff and Class Members to properly secure their Private Information, encrypt and maintain such information using

9

industry standard methods, train its employees, use available technology to defend its systems from invasion, act reasonably to prevent foreseeable harm to Plaintiff and Class Members, and to *promptly* notify Plaintiff and Class Members when PBI became aware that their Private Information may have been compromised.

37.    PBI had the resources necessary to prevent the Data Breach but neglected to adequately invest in security measures, despite its obligation to protect such information. Accordingly, PBI breached its common law, statutory, and other duties owed to Plaintiff and Class Members.

38.    Security standards commonly accepted among businesses, and that PBI lacked, include, without limitation:

a.  Maintaining a secure firewall configuration;

b.  Maintaining appropriate design, systems, and controls to limit user access to certain information as necessary;

c.  Monitoring for suspicious or irregular traffic to servers;

d.  Monitoring for suspicious credentials used to access servers;

e.  Monitoring for suspicious or irregular activity by known users;

f.  Monitoring for suspicious or unknown users;

g.  Monitoring for suspicious or irregular server requests;

h.  Monitoring for server requests for Private Information;

i.  Monitoring for server requests from VPNs;

j.  Monitoring for server requests from Tor exit nodes;

k.  The destruction of data of Class Members' data where the PBI no longer has an authorized need for the retention of that data; and

l.  An appropriate management structure to ensure oversight of PBI's

information security posture, and to address deficiencies when detected and to ensure the proper funding to maintain a secure environment.

39.    The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[5] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[6]

40.    The ramifications of PBI's failure to keep its consumers' Private Information secure are long lasting and severe. Once Private Information is stolen, particularly Social Security and driver's license numbers, fraudulent use of that information and damage to victims is likely to continue for years.

**THE VALUE OF PERSONALLY IDENTIFIABLE INFORMATION**

41.    The Private Information of consumers remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[7] According to the Dark Web Price Index for 2021, payment card details for an

---

[5] 17 C.F.R. § 248.201 (2013).
[6] *Id.*
[7] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-

account balance up to $1,000 have an average market value of $150, credit card details with an account balance up to $5,000 have an average market value of $240, stolen online banking logins with a minimum of $100 on the account have an average market value of $40, and stolen online banking logins with a minimum of $2,000 on the account have an average market value of $120.[8]

42.    Social Security numbers, for example, are among the worst kind of personal information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

43.    A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, when they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[9]

44.    Furthermore, trying to change or cancel a stolen Social Security number is

---

the-dark-web-how-much-it-costs/ (last accessed July 10, 2023).
[8] *Dark Web Price Index 2021*, Zachary Ignoffo, March 8, 2021, *available at*:
https://www.privacyaffairs.com/dark-web-price-index-2021/ (last accessed July 10, 2023).
[9] Social Security Administration, *Identity Theft and Your Social Security Number*, *available at*:
https://www.ssa.gov/pubs/EN-05-10064.pdf (last accessed July 10, 2023).

no minor task. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

45.    Even then, a new Social Security number may not be effective, as "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[10]

46.    This data, as one would expect, demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "[c]ompared to credit card information, personally identifiable information and Social Security Numbers are worth more than 10x on the black market."[11]

47.    Private Information can be used to distinguish, identify, or trace an individual's identity, such as their name and Social Security number. This can be accomplished alone, or in combination with other personal or identifying information that is connected or linked to an individual, such as their birthdate, birthplace, and mother's maiden name.[12]

48.    Given the nature of PBI's Data Breach, as well as the length of the time

---

[10] Brian Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft (last accessed July 10, 2023).
[11]    Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, Computer World (Feb. 6, 2015), http://www.itworld.com/article/2880960/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last accessed July 10, 2023).
[12] *See* OFFICE OF MGMT. & BUDGET, OMB MEMORANDUM M-07-16 n. 1.

PBI's systems were breached and the extreme delay in notification to Class Members, it is foreseeable that the compromised Private Information has been or will be used by hackers and cybercriminals in a variety of devastating ways. Indeed, the cybercriminals who possess Plaintiff's and Class Members' Private Information can easily obtain Plaintiff's and Class Members' tax returns and/or open fraudulent credit card accounts in Class Members' names.

49.    Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach, because credit card victims can cancel or close credit and debit card accounts.[13] The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change (such as Social Security numbers).

50.    To date, PBI offered its consumers only temporary, non-automatic identity monitoring services. The offered services are inadequate to protect Plaintiff and Class Members from the threats they face presently and for years to come, particularly in light of the sensitive Private Information at issue here.

51.    The injuries to Plaintiff and Class Members were directly and proximately caused by PBI's failure to implement or maintain adequate data security measures.

**PBI FAILS TO COMPLY WITH FTC GUIDELINES**

52.    The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security

---

[13] *See* Jesse Damiani, *Your Social Security Number Costs $4 On The Dark Web, New Report Finds*, Forbes, Mar 25, 2020, *available at*:
https://www.forbes.com/sites/jessedamiani/2020/03/25/your-social-security-number-costs-4-on-the-dark-web-new-report-finds/?sh=6a44b6d513f1 (last accessed July 10, 2023).

practices. According to the FTC, the need for data security should be factored into all business decision- making.

53.    In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal patient information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[14] The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[15]

54.    The FTC further recommends that companies not maintain Private Information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

55.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer data, treating the failure to employ

---

[14] Protecting Personal Information: A Guide for Business, Federal Trade Commission (2016), *available at*: https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited July 10, 2023).
[15] *Id.*

reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45.

56.    PBI failed to properly implement basic data security practices.

57.    PBI's failure to employ reasonable and appropriate measures to protect against unauthorized access to consumers' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

58.    PBI was at all times fully aware of its obligation to protect the Private Information of its subjects. PBI was also aware of the significant repercussions that would result from its failure to do so.

59.    Several best practices have been identified that at a minimum should be implemented by companies like PBI, including but not limited to: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti- malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data; and limiting which employees can access sensitive data.

60.    Other best cybersecurity practices that are standard in the PBI's industry include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

61.    PBI failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

62.    These foregoing frameworks are existing and applicable industry standards in PBI's industry, and PBI failed to comply with these accepted standards, thereby opening the door to and causing the Data Breach.

**PBI'S BREACH**

63.    PBI breached its obligations to Plaintiff and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems and data. PBI's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

a.  Failing to maintain an adequate data security system to reduce the risk of data breaches;

b.  Failing to adequately protect consumers' Private Information;

c.  Failing to properly monitor its own data security systems for existing intrusions;

d.  Failing to train its employees in the proper handling of data breaches, the protection of Private Information, and the maintenance of adequate email security practices;

e.   Failing to comply with the FTC guidelines for cybersecurity, in violation of Section 5 of the FTC Act; and,

f.   Failing to adhere to industry standards for cybersecurity.

64.   PBI negligently and unlawfully failed to safeguard Plaintiff's and Class Members' Private Information by allowing cyberthieves to access PBI's IT systems which contained unsecured and unencrypted Private Information.

65.   Accordingly, as outlined below, Plaintiff and Class Members now face an increased risk of fraud and identity theft. In addition, Plaintiff and Class Members lost the benefit of the bargain they made with PBI.

**HARM TO CONSUMERS**

66.   Private Information is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black- market" for years.

67.   There is a strong probability that entire batches of stolen information have been dumped on the black market and are yet to be dumped on the black market, meaning Plaintiff and Class Members are at an increased risk of fraud and identity theft for many years into the future.

68.   Thus, Plaintiff and Class Members must vigilantly monitor their financial accounts for many years to come.

69.   For example, the Social Security Administration has warned that identity thieves can use an individual's Social Security number to apply for additional credit lines. Such fraud may go undetected until debt collection calls commence months, or even years,

later. Stolen Social Security Numbers also make it possible for thieves to file fraudulent tax returns, file for unemployment benefits, or apply for a job using a false identity. Each of these fraudulent activities is difficult to detect. An individual may not know that his or her Social Security Number was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

70.     Moreover, it is not an easy task to change or cancel a stolen Social Security number.

71.     An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. Even then, a new Social Security number may not be effective, as "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[16] The fraudulent activity resulting from the Data Breach may not come to light for years.

72.     There may be a time lag between when harm occurs versus when it is discovered, and also between when Private Information is stolen and when it is used.

73.     At all relevant times, PBI knew, or reasonably should have known, of the importance of safeguarding the Plaintiff's and Class Members' Private Information, including Social Security numbers and driver's license numbers, and of the foreseeable consequences that would occur if PBI's data security system and network was breached,

---

[16] Brian Naylor, "*Victims of Social Security Number Theft Find It's Hard to Bounce Back*," NPR (Feb. 9, 2015), http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about- identity-theft (last accessed July 10, 2023).

including, specifically, the significant costs that would be imposed on Plaintiff and Class Members as a result of a breach.

74.    PBI knew or should have known about these dangers and strengthened its data, IT, and email handling systems accordingly. PBI was put on notice of the substantial and foreseeable risk of harm from a data breach, yet it failed to properly prepare for that risk.

### *Plaintiff Karen Smith's Facts*

75.    PBI received highly sensitive Private Information from Plaintiff in connection with PBI's provision of pension benefit management services the company provided to CalPERS. Plaintiff is a retired public employee with a pension through CalPERS. As a result of PBI's provision of pension management services on behalf of CalPERS, Plaintiff's information was among the data accessed by an unauthorized third party in the Data Incident.

76.    On or about June 30, 2023, Plaintiff Karen Smith received notice from CalPERS that her Private Information had been improperly accessed and/or obtained by unauthorized third parties during PBI's Data Breach. This notice indicated that Plaintiff Smith's Private Information, including her name, date of birth, and Social Security number, was compromised as a result of the Data Incident.

77.    As a result of the Data Incident, Plaintiff Smith made reasonable efforts to mitigate the impact of the Data Incident, including but not limited to: researching the Data Incident; reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud; and researching credit

monitoring and identity theft protection services. Plaintiff Smith has spent at least significant time dealing with the Data Incident, valuable time Plaintiff Smith otherwise would have spent on other activities, including but not limited to work and/or recreation.

78.    As a result of the Data Incident, Plaintiff Smith has suffered anxiety as a result of the release of her Private Information, which she believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and/or using her Private Information for purposes of identity theft and fraud.  Plaintiff Smith is very concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Incident.

79.    Plaintiff Smith suffered actual injury from having her Private Information compromised as a result of the Data Incident including, but not limited to (a) damage to and diminution in the value of her Private Information, a form of property that PBI obtained about Plaintiff Smith; (b) violation of her privacy rights; and (c) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

80.    As a result of the Data Incident, Plaintiff Smith anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Incident. As a result of the Data Incident, Plaintiff Smith is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

## CLASS ACTION ALLEGATIONS

81.    Plaintiff brings this action on behalf of herself and all other similarly situated persons pursuant to Federal Rule of Civil Procedure 23, including Rule 23(b)(1)-(3) and (c)(4).  Plaintiff seeks to represent the following class and subclasses:

> **Nationwide Class**. All persons in the United States whose personal information was compromised in or as a result of PBI's data incident discovered by PBI in May or June 2023.

Excluded from the class are the following individuals and/or entities: PBI and PBI's parents, subsidiaries, affiliates, officers, directors, or employees, and any entity in which PBI has a controlling interest; all individuals who make a timely request to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

82.    Plaintiff reserves the right to amend or modify the class definitions with greater particularity or further division into subclasses or limitation to particular issues.

83.    This action has been brought and may be maintained as a class action under Rule 23 because there is a well-defined community of interest in the litigation and the proposed classes are ascertainable, as described further below:

    a.    <u>Numerosity</u>: The potential members of the class as defined are so numerous that joinder of all members of the class is impracticable.  While the precise number of Class Members at issue has not been determined, Plaintiff believes the cybersecurity breach affected millions of individuals nationwide.

    b.    <u>Commonality</u>: There are questions of law and fact common to Plaintiff and the class that predominate over any questions affecting only the individual

members of the class.  The common questions of law and fact include, but are not limited to, the following:

    i.   Whether PBI owed a duty to Plaintiff and Class Members to exercise due care in collecting, storing, processing, and safeguarding their personal information;

   ii.   Whether PBI breached those duties;

  iii.   Whether PBI implemented and maintained reasonable security procedures and practices appropriate to the nature of the personal information of Class Members;

  iv.   Whether PBI acted negligently in connection with the monitoring and/or protecting of Plaintiff's and Class Members' personal information;

   v.   Whether PBI knew or should have known that they did not employ reasonable measures to keep Plaintiff's and Class Members' personal information secure and prevent loss or misuse of that personal information;

  vi.   Whether PBI adequately addressed and fixed the vulnerabilities which permitted the data breach to occur;

 vii.   Whether PBI caused Plaintiff and Class Members damages;

viii.   Whether the damages PBI caused to Plaintiff and Class Members includes the increased risk and fear of identity theft and fraud

resulting from the access and exfiltration, theft, or disclosure of their personal information;

ix. Whether Plaintiff and Class Members are entitled to credit monitoring and other monetary relief;

x. Whether PBI's failure to implement and maintain reasonable security procedures and practices constitutes negligence;

xi. Whether PBI's failure to implement and maintain reasonable security procedures and practices constitutes negligence per se; and,

xii. Whether PBI's failure to implement and maintain reasonable security procedures and practices constitutes violation of the Federal Trade Commission Act, 15 U.S.C. § 45(a).

c. <u>Typicality</u>. Plaintiff's claims are typical of those of other Class Members because Plaintiff's Private Information, like that of every other Class Member, was compromised in the Data Breach.

d. <u>Adequacy of Representation</u>. Plaintiff will fairly and adequately represent the interests of the class. Counsel who represent Plaintiff are experienced and competent in consumer and data privacy class actions such as this one.

e. <u>Superiority and Predominance</u>. A Class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a Class action, most Class Members would likely find that the cost of litigating their individual claims

is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for PBI. In contrast, the conduct of this action as a Class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member. PBI has engaged in a common course of conduct toward Plaintiff and Class Members, in that all of Plaintiff's and Class Members' data was stored on the same computer system and unlawfully accessed in the same way. The common issues arising from PBI's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

84.  Class certification is also appropriate under Fed. R. Civ. P. 23(a) and (b)(2) because PBI has acted or refused to act on grounds generally applicable to the class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the class as a whole.

85.  Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present particular, common issues, the resolution of which would advance the disposition of the matters and the parties' interests therein. Such particular issues include, but are not limited to:

a.  Whether PBI owed a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, processing, using, and safeguarding their personal information;

b.  Whether PBI breached that legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, processing, using, and safeguarding their personal information;

c.  Whether PBI failed to comply with their own policies and applicable laws, regulations, and industry standards relating to data security;

d.  Whether PBI failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the personal information compromised in the breach; and

e.  Whether Class Members are entitled to actual damages, nominal damages, credit monitoring, injunctive relief, as a result of PBI's wrongful conduct as alleged herein.

**CAUSES OF ACTION**

**COUNT 1**
**Negligence**
**(On Behalf of Plaintiff and All Class Members)**

86.  Plaintiff and Class Members realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

87.  Plaintiff brings this count on behalf of themselves and the Class.

88.  Plaintiff's and Class Members Private Information was entrusted to PBI on the premise and with the understanding that PBI would safeguard their information, use

their Private Information for business purposes only, and/or not disclose their Private Information to unauthorized third parties.

89.    PBI has full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and the Class could and would suffer if the Private Information were wrongfully disclosed or obtained by unauthorized parties.

90.    PBI knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the Private Information entrusted to PBI involved an unreasonable risk of harm to Plaintiff and the Class, including harm that foreseeably could occur through the criminal acts of a third party.

91.    PBI owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, storing, using, processing, deleting and safeguarding their personal information in its possession from being compromised, stolen, accessed, and/or misused by unauthorized persons. That duty includes a duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the personal information that were compliant with and/or better than industry-standard practices. PBI's duties included a duty to design, maintain, and test its security systems to ensure that Plaintiff's and Class Members' personal information was adequately secured and protected, to implement processes that would detect a breach of its security system in a timely manner, to timely act upon warnings and alerts, including those generated by its own security systems regarding intrusions to its networks, and to promptly, properly, and fully notify its clients, Plaintiff, and Class Members of any data breach.

92.    PBI's duties to use reasonable care arose from several sources, including

but not limited to those described below.

93.    PBI had a common law duty to prevent foreseeable harm to others. This duty existed because Plaintiff and Class Members were the foreseeable and probable victims of any inadequate security practices. In fact, not only was it foreseeable that Plaintiff and Class Members would be harmed by the failure to protect their personal information because hackers routinely attempt to steal such information and use it for nefarious purposes, but PBI also knew that it was more likely than not Plaintiff and other Class Members would be harmed.

94.    PBI's duty also arose under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect personal information by companies such as PBI.

95.    Various FTC publications and data security breach orders further form the basis of PBI's duty. According to the FTC, the need for data security should be factored into all business decision making.[17] In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established guidelines for fundamental data security principles and practices for business.[18] Among other things, the

---

[17]    *Start with Security, A Guide for Business*, FTC (June 2015), https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf

[18]    *Protecting Personal Information, A Guide for Business*, FTC (Oct. 2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf

guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach. Additionally, the FTC recommends that companies limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor for suspicious activity on the network, and verify that third-party service providers have implemented reasonable security measures. The FBI has also issued guidance on best practices with respect to data security that also form the basis of PBI's duty of care, as described above.[19]

96.    By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' personal information, PBI assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' personal information from disclosure.

97.    PBI also had a duty to safeguard the personal information of Plaintiff and Class Members and to promptly notify them of a breach because of state laws and statutes that require PBI to reasonably safeguard personal information, as detailed herein,

---

[19] *How to Protect Your Networks from Ransomware*, FBI, https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view (last accessed on July 10, 2023).

including Cal. Civ. Code § 1798.80 *et seq.*

98.    Timely notification was required, appropriate, and necessary so that, among other things, Plaintiff and Class Members could take appropriate measures to freeze or lock their credit profiles, cancel or change usernames or passwords on compromised accounts, monitor their account information and credit reports for fraudulent activity, contact their banks or other financial institutions that issue their credit or debit cards, obtain credit monitoring services, develop alternative timekeeping methods or other tacks to avoid untimely or inaccurate wage payments, and take other steps to mitigate or ameliorate the damages caused by PBI's misconduct.

99.    Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their personal information.

100.    PBI breached the duties it owed to Plaintiff and Class Members described above and thus was negligent. PBI breached these duties by, among other things, failing to: (a) exercise reasonable care and implement adequate security systems, protocols and practices sufficient to protect the personal information of Plaintiff and Class Members; (b) prevent the breach; (c) timely detect the breach; (d) maintain security systems consistent with industry; (e) timely disclose that Plaintiff's and Class Members' personal information in PBI's possession had been or was reasonably believed to have been stolen or compromised; (f) failing to comply fully even with its own purported security practices.

101.    PBI knew or should have known of the risks of collecting and storing personal information and the importance of maintaining secure systems, especially in

light of the increasing frequency of ransomware attacks. The sheer scope of PBI's operations further shows that PBI knew or should have known of the risks and possible harm that could result from its failure to implement and maintain reasonable security measures. On information and belief, this is but one of the several vulnerabilities that plagued PBI's systems and led to the data breach.

102. Through PBI's acts and omissions described in this complaint, including PBI's failure to provide adequate security and its failure to protect the personal information of Plaintiff and Class Members from being foreseeably captured, accessed, exfiltrated, stolen, disclosed, accessed, and misused, PBI unlawfully breached their duty to use reasonable care to adequately protect and secure Plaintiff's and Class Members' personal information.

103. PBI further failed to timely and accurately disclose to clients, Plaintiff, and Class Members that their personal information had been improperly acquired or accessed and/or was available for sale to criminals on the dark web. Plaintiff and Class Members could have taken action to protect their personal information if they were provided timely notice.

104. But for PBI's wrongful and negligent breach of its duties owed to Plaintiff and Class Members, their personal information would not have been compromised.

105. Plaintiff and Class Members relied on PBI to keep their personal information confidential and securely maintained, and to use this information for business purposes only, and to make only authorized disclosures of this information.

106.    As a direct and proximate result of PBI's negligence, Plaintiff and Class Members have been injured as described herein, and are entitled to damages, including compensatory and nominal damages, in an amount to be proven at trial. As a result of PBI's failure to protect Plaintiff's and Class Members' personal information, Plaintiff's and Class Members' personal information has been accessed by malicious cybercriminals. Plaintiff 'and the Class Members' injuries include:

a.    theft of their personal information;

b.    costs associated with requested credit freezes;

c.    costs associated with the detection and prevention of identity theft and unauthorized use of their financial accounts;

d.    costs associated with purchasing credit monitoring and identity theft protection services;

e.    unauthorized charges and loss of use of and access to their financial account funds and costs associated with the inability to obtain money from their accounts or being limited in the amount of money they were permitted to obtain from their accounts, including missed payments on bills and loans, late charges and fees, and adverse effects on their credit;

f.    lowered credit scores resulting from credit inquiries following fraudulent activities;

g.    costs associated with time spent and loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the data breach, including finding fraudulent

charges, cancelling and reissuing cards, enrolling in credit monitoring and identity theft protection services, freezing and unfreezing accounts, and imposing withdrawal and purchase limits on compromised accounts;

h.    the imminent and certainly impending injury flowing from potential fraud and identity theft posed by their personal information being placed in the hands of criminals;

i.    damages to and diminution of value of their personal information entrusted, directly or indirectly, to PBI with the mutual understanding that PBI would safeguard Plaintiff's and the Class Members' data against theft and not allow access and misuse of their data by others;

j.    continued risk of exposure to hackers and thieves of their personal information, which remains in PBI's possession and is subject to further breaches so long as PBI fails to undertake appropriate and adequate measures to protect Plaintiff and Class Members, along with damages stemming from the stress, fear, and anxiety of an increased risk of identity theft and fraud stemming from the breach;

k.    loss of the inherent value of their personal information;

l.    the loss of the opportunity to determine for themselves how their personal information is used; and

m.    other significant additional risk of identity theft, financial fraud, and other identity-related fraud in the indefinite future.

107.   In connection with the conduct descried above, PBI acted wantonly, recklessly, and with complete disregard for the consequences Plaintiff and Class Members would suffer if their highly sensitive and confidential personal information, including but not limited to name, company name, address, social security numbers, and banking and credit card information, was access by unauthorized third parties.

## COUNT II
### Negligence Per Se
### (On Behalf of Plaintiff and All Class Members)

108.   Plaintiff and Class Members realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

109.   Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect personal information by companies such as PBI.  Various FTC publications and data security breach orders further form the basis of PBI's duty. In addition, individual states have enacted statutes based on the FTC Act that also created a duty.

110.   PBI violated Section 5 of the FTC Act by failing to use reasonable measures to protect personal information and not complying with industry standards. PBI's conduct was particularly unreasonable given the nature and amount of personal information it obtained and stored and the foreseeable consequences of a data breach.

111.   PBI's violation of Section 5 of the FTC Act constitutes negligence *per se*.

112.   Plaintiff and Class Members are consumers within the class of persons Section 5 of the FTC Act was meant to protect.

113.    Moreover, the harm that has occurred is the type of harm that the FTC Act was intended to guard against. Indeed, the FTC has pursued over fifty enforcement actions against businesses which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm suffered by Plaintiff and the Class.

114.    As a direct and proximate result of PBI's negligence, Plaintiff and Class Members have been injured as described herein, and are entitled to damages, including compensatory and nominal damages, in an amount to be proven at trial.

## COUNT III
### Declaratory Judgment
### (On Behalf of Plaintiff and All Class Member)

115.    Plaintiff and Class Members realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

116.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, et. seq., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief.  Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

117.    Plaintiff brings this count on behalf of themselves and the Class.

118.    PBI owes duties of care to Plaintiff and Class Members which require them to adequately secure their Private Information

119.    PBI still possesses Plaintiff's and Class Members' Private Information.

120.    PBI does not specify in the *Notice of Data Breach* letter what steps they have taken to prevent this from occurring again.

121.    Plaintiff and Class Members are at risk of harm due to the exposure of their Private Information and PBI's failure to address the security failings that lead to such exposure.

122.    An actual controversy has arisen in the wake of the Data Breach regarding its present and prospective common law and other duties to reasonably safeguard Plaintiff's and the Class Members' Private Information and whether PBI is currently maintaining data security measures adequate to protect Plaintiff and the Class from further data breaches that compromise their Private Information.

123.    Plaintiff and the Class, therefore, seek a declaration that (1) each of PBI's existing security measures do not comply with its obligations and duties of care to provide reasonable security procedures and practices appropriate to the nature of the information to protect consumers' personal information, and (2) to comply with its duties of care, PBI must implement and maintain reasonable security measures, including, but not limited to:

    a.  Engaging third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on PBI's systems on a periodic basis, and ordering PBI to promptly correct any problems or issues detected by such third-party security auditors;

b.  Engaging third-party security auditors and internal personnel to run automated security monitoring;

c.  Auditing, testing, and training its security personnel regarding any new or modified procedures;

d.  Segmenting user applications by, among other things, creating firewalls and access controls so that if one area is compromised, hackers cannot gain access to other portions of PBI's systems;

e.  Conducting regular database scanning and security checks;

f.  Routinely and continually conducting internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

g.  Purchasing credit monitoring services for Plaintiff and Class Members for a period of ten years;

h.  Meaningfully educating Plaintiff and Class Members about the threats they face as a result of the loss of their Private Information to third parties, as well as the steps they must take to protect themselves; and

i.  The appointment of a qualified and independent third-party assessor, funded by PBI, who shall be charged with assessing PBI's compliance with the injunctive components of the relief imposed by the court, and who shall distribute to counsel for the Class on an annual basis a report reflecting the details of the assessor's assessment.

124.    The Court should issue corresponding prospective injunctive relief requiring PBI to employ adequate security protocols consistent with the law and industry standards to protect Plaintiff's and Class Members' Private Information.

125.    If an injunction is not issued, Plaintiff and the Class will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach by PBI. The risk of another data breach is real, immediate, and substantial.

126.    The hardship to Plaintiff and the Class if an injunction does not issue exceeds the hardship to PBI if an injunction is issued. If another data breach occurs at PBI, Plaintiff and the Class will likely be subjected to fraud, identity theft, and other harms described herein. But, the cost to PBI of complying with an injunction by employing reasonable prospective data security measures is minimal given it had pre-existing legal obligations to employ these measures.

<u>**COUNT IV**</u>
**Common Law Invasion of Privacy – Intrusion Upon Seclusion**
**(On Behalf of Plaintiff and All Class Members)**

127.    Plaintiff and the Class Members realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

128.    Plaintiff brings this count on behalf of herself and the Class.

129.    Plaintiff and Class Members had a legitimate expectation of privacy to their Private Information and were entitled to the protection of this information against disclosure to unauthorized third parties.

130.    PBI owed a duty to Plaintiff and Class Members to keep their Private Information contained as a part thereof, confidential.

131.   PBI failed to protect and released to unknown and unauthorized third parties the non-redacted and non-encrypted Private Information of Plaintiff and Class Members.

132.   PBI allowed unauthorized and unknown third parties access to and examination of the Private Information of Plaintiff and Class Members, by way of PBI's failure to protect the Private Information.

133.   The unauthorized release to, custody of, and examination by unauthorized third parties of the Private Information of Plaintiff and Class Members is highly offensive to a reasonable person.

134.   The intrusion was into a place or thing, which was private and is entitled to be private. Plaintiff and Class Members disclosed their Private Information to PBI as part of their relationships with PBI, but privately with an intention that the Private Information would be kept confidential and would be protected from unauthorized disclosure. Plaintiff and Class Members were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

135.   The Data Breach at the hands of PBI constitutes an intentional interference with Plaintiff's and Class Members' interest in solitude or seclusion, either as to their persons or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

136.   PBI acted with a knowing state of mind when it permitted the Data Breach to occur because it was with actual knowledge that its information security practices were inadequate and insufficient.

137.    Because PBI acted with this knowing state of mind, it had notice and knew the inadequate and insufficient information security practices would cause injury and harm to Plaintiff and Class Members.

138.    PBI's implementation of inadequate data security measures and its abdication of its responsibility to reasonably protect data it required Plaintiff and the Class to provide and stored on its own servers and databases constitutes a violation of the Restatement of the Law of Torts (Second).

139.    As a proximate result of the above acts and omissions of PBI, Plaintiff and Class Members' Private Information was disclosed to third parties without authorization, causing Plaintiff and Class Members to suffer damages.

140.    Unless and until enjoined, and restrained by order of this Court, PBI's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class Members in that the Private Information maintained by PBI can be viewed, distributed, and used by unauthorized persons for years to come. Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and Class Members.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and all Class Members, request judgment against PBI and that the Court grant the following:

        a.   For an Order certifying the Class and Subclasses as defined herein, and appointing Plaintiff and her counsel to represent the Class and Subclasses;

b.  For equitable relief enjoining PBI from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff and the Class Members' Private Information, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiff and the Class Members;

c.  For injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an order:

   i.  prohibiting PBI from engaging in the wrongful and unlawful acts described herein;

   ii.  requiring PBI to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

   iii.  requiring PBI to provide out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information for Plaintiff's and Class Members' respective lifetimes;

   iv.  requiring PBI to delete, destroy, and purge the personally identifying information of Plaintiff and Class Members unless PBI can provide to the Court reasonable justification for the retention and use of such

information when weighed against the privacy interests of Plaintiff and Class Members;

v. requiring PBI to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the personally identifying information of Plaintiff and Class Members;

vi. prohibiting PBI from maintaining Plaintiff and Class Members' personally identifying information on a cloud-based database;

vii. requiring PBI to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on PBI's systems on a periodic basis, and ordering PBI to promptly correct any problems or issues detected by such third-party security auditors;

viii. requiring PBI to engage independent third-party security auditors and internal personnel to run automated security monitoring;

ix. requiring PBI to audit, test, and train its security personnel regarding any new or modified procedures;

x. requiring PBI to segment data by, among other things, creating firewalls and access controls so that if one area of PBI's network is compromised, hackers cannot gain access to other areas of PBI's systems;

xi.  requiring PBI to conduct regular database scanning and securing checks;

xii.  requiring PBI to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personally identifying information, as well as protecting the personally identifying information of Plaintiff and Class Members;

xiii.  requiring PBI to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xiv.  requiring PBI to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with PBI's policies, programs, and systems for protecting personally identifying information;

xv.  requiring PBI to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor PBI's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xvi. requiring PBI to adequately educate all Class Members about the threats that they face as a result of the loss of their confidential personally identifying information to third parties, as well as the steps affected individuals must take to protect themselves;

xvii. requiring PBI to implement logging and monitoring programs sufficient to track traffic to and from PBI's servers; and, for a period of 10 years, appointing a qualified and independent third party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate PBI's compliance with the terms of the Court's final judgment, to provide such report to the Court and to Class Counsel, and to report any material deficiencies or noncompliance with the Court's final judgment;

d. That the Court award Plaintiff, the Class and Subclass members damages, including actual, consequential, and nominal damages, as allowed by law in an amount to be determined;

e. That the Court order disgorgement and restitution of all earnings, profits, compensation and benefits received by PBI as a result of its unlawful acts, omissions and practices;

f. For prejudgment and post-judgment interest on all amounts awarded; and,

g. Such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of herself and the putative Class, hereby demand a trial by jury

on all issues of fact or law so triable.

July 10, 2023

/s/  Nathan D. Prosser
Nathan D. Prosser (MN #0329745)
Anne T. Regan (MN #0333852)
Lindsey L. Larson (MN #0401257)
**HELLMUTH & JOHNSON, PLLC**
8050 West 78th Street
Edina, MN 55439
(952) 941-4005
nprosser@hjlawfirm.com
aregan@hjlawfirm.com
llabellelarson@hjlawfirm.com

Terence R. Coates *(pro hac vice forthcoming)*
Dylan J. Gould *(pro hac vice forthcoming)*
**MARKOVITS, STOCK & DEMARCO, LLC**
119 E. Court, Suite 530
Cincinnati, OH 45202
(513) 651-3700
tcoates@msdlegal.com
dgould@msdlegal.com

***Attorneys for Plaintiff***